Denio, Ch. J., (dissenting).
The first section of the act in relation to the keeping of gunpowder, &e., in the city of New York, declares it to be unlawful “to have or keep, any quantity of [that article] in any one house, store, building or other place,” in that city, “to the southward óf a line running through the centre of Forty-second street, from the North to the East river.” (Laws 1846, ch. 291.) Section eighteen of the *527 same act subjects every offender against its provisions to a fine of five hundred dollars for each offence, and declares that all gunpowder or saltpetre found within the limits specified in the first section shall be forfeited to the use of the fire department ; and the sixth section provides that in every case of a violation of any provision of the act, where the penalty prescribed thereby for such violation is the forfeiture of any gunpowder to the fire department, it shall be lawful for any fire warden of the said city to seize such gunpowder, in the daytime, and to cause the same to be conveyed to any magazine used for the purpose of storing gunpowder.
If we construe these provisions according to a common intent, the powder in question was legally forfeited, and was properly seized by the parties authorized to make the seizure. The vessel from which it was taken was within the district mentioned, for it was moored at a pier south of the line referred to. The term place, used in the act, is a word of very large signification. Literally, it embraces the hold of a vessel as well as a place of deposit on land; and the words, “ to have or keep,” particularly the former, would properly qualify any kind of possession or custody to which personal property could be subjected. The case, therefore, falls clearly within the language of the statute, and unless a contrary intention can be gathered from an examination of all its provisions, the conclusion of the Supreme Court affirming the alleged forfeiture must be considered correct. So far as I can perceive, the mischief intended to be provided against, which was the hazard of life and property from the explosion of gunpowder, would be about equally great where the place of deposit was a vessel lying at a wharf or pier, or in close proximity to a wharf or pier, as if it were in a store or other place for storage on land. There does not seem to be anything, therefore, in the nature of the case to prevent the application of the statute. There is, as has been argued,. a principle of construction, by which words of a general and indeterminate signification, when used in immediate connection with others of á more *528 definite meaning, are to have a limited interpretation on account of such association; and hence there is considerable plausibility in the suggestion that in the phrase “ house, store, building or other place” the last named words should be held to indicate some fixed place of deposit on land, of the general character of a house, store or building, and should not be considered as embracing a movable thing like a vessel or floating structure, such as this schooner was. If there was nothing else in the act favoring the construction for which the plaintiff contends, I should be embarrassed by this principle of construction, which, besides being supported by adjudged cases, is consonant to common sense and to obvious rules of literary criticism. But the third section of the act provides an exception, which seems to assume that vessels lying near the shore are embraced in the prohibition. It declares it to be lawful for dealers in gunpowder in Hew York to have not exceediñg five quarter casks of powder at one time on the walk in front of their stores, for the purpose of packing it and sending it on board of a vessel within the district; but it requires that the vessel shall, before sundown, haul into the stream a distance’ of at least three hundred yards from any dock or pier, and shall not at any time, until eight o’clock of the morning, while such powder is on board, lie within that distance of a dock or pier. The fourth section provides for the case of vessels arriving in the harbor laden with powder to an amount greater than twenty-eight pounds. Such vessels are required, within forty-eight hours after their arrival, -and without approaching within three hundred yards of any wharf south of the line mentioned, to cause the powder.to be landed in small boats at some place without the limits, to be stored in a magazine. These provisions show, in the first place, that the waters of the harbor were regarded by the legislature as embraced in the district designated in the first section, within which it was forbidden to have or keep gunpowder; and, in the next place, that it was thought judicious, in the interests of tjade and commerce, to make certain exceptions to the *529 otherwise universal rule of exclusion; and the fourth section is very decisive to the same purpose.
The twentieth section of the act is strongly relied on by the defendants’ counsel, as exempting vessels taking on board, gunpowder, under the circumstances, appearing in this case, from the operation of the act. It declares that the penalties and provisions of the act shall not extend to any vessel receiving gunpowder as freight, provided súch vessel do not remain at any wharf in said city, or within three hundred yards thereof, after sunset, or on any other day whilst having gunpowder on board. At first view, it would seem to allow the loading of vessels with gunpowder, without limit as to quantity, of restriction as to the place where the vessel might be moored; and this is its effect, unless it is controlled by the' prior sections to which reference has been made. But I am’ of opinion that it is controlled .by those prior provisions. By section three, powder in limited quantities may be put on board a vessel from any part of the . city; and by section four, vessels arriving in the harbor, having to exceed twenty-eight pounds on board, may cause it to be put into small boats, to be landed at some place without the district; but the vessel so laden is not to approach within three hundred yards of any wharf. The powder in question, which was seized by the firewarden, greatly exceeded in quantity the amount allowed to be put on board a vessel by section three; and, besides, it did not-come from the store of a dealer in the city.
If the 20th section allows only such lading of powder as is permitted by those sections, and I think it is thus limited, it afforded no protection to the plaintiff. I think this-twentieth section was inserted for greater caution, in order to protect, by direct language, the transactions allowed by the third, fourth and fifth sections.
If I am right in these conclusions, it follows that the judgment appealed from was correct, and that it ought to be affirmed. A different construction, however, prevails with the other judges, which leads to the reversal of the judgment, and *530 the award of a new trial; and that will be the judgment of the court.
Balcom, J., dissented; Marvin, J., expressed no opinion.
Judgment reversed and new trial ordered.
*531 CASES DETERMINED IN THE COURT OF APPEALS OP THE STATE OF NEW YORK, June Term, 1863.